Stewardson Homestead Loan Association v. First National Bank of Ava, Illinois, Appellant. F. F. Yakey, Appellee.

Gen. No. 8,449.

October term, 1930. Heard in this court at the October term, 1930. Opinion filed January 26, 1931.

I. K. LEVY, W. F. ELLIS and GEO. B. RHOADS, for appellant.

WARD & PUGH and W. H. CRAIG, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The Stewardson Homestead Loan Association filed its bill of interpleader alleging therein that on April

1, 1920, it issued to one A. C. Mautz 100 shares of Series 38 of its Capital Stock of the par value of $100 per share when said stock matured; that it accelerated the maturity and retired the stock on April 1, 1929, when it had a value of $9,850; that the First National Bank of Ava claims to be the owner of and entitled to the proceeds of said certificate of stock and has demanded the payment of the same to it; that one F. F. Yakey, defendant, also claims to be the owner of said certificate by virtue of an instrument in writing purporting to be an assignment of said certificate of stock to him executed by said Mautz and has also demanded the payment of the proceeds of said certificate of stock to him; that complainant is willing to pay the amount due thereon to the person who is legally entitled thereto as the court may determine, etc.

It appears from an order entered by the court that commencing with May 1, 1928, the First National Bank of Ava and F. F. Yakey each paid the monthly dues on said capital stock on account of their respective claims thereto and that the amount of excess dues so paid to the complainant is $755 and that the disposition of said excess dues should await the final determination in the cause. The complainant paid $9,850, the amount due on the certificate of stock, and also $755, said excess fees, into court and was dismissed out of court. The defendant Mautz disclaimed any interest in these funds.

The First National Bank of Ava was formerly known as the First National Bank of Willisville but the change of location and name was made in accordance with law and the corporate existence remained identical. This change took place July 1, 1927. In 1921, Mautz borrowed the sum of $2,500 from the First National of Willisville and that note was renewed from time to time and payments made thereon until November, 1923, when that bank wrote to him that the

bank examiner required him to make a credit statement. Just how much was due on the note at that time is not shown by the evidence. In reply to the request for a credit statement Mautz wrote to the bank as follows:

"I received your notice, and I am offering my note herewith enclosed together with certificate representing 100 shares in our loan association as collateral instead of statement.

"The withdrawal value of this stock is at this time over $3,000 and in case this does not meet with your requirements, let me know, and I will try and arrange to pay it."

Attached to the note was a written assignment of the certificate of stock as collateral to secure the payment of the note. This note was renewed from time to time and payments made thereon so that the debt was reduced on April 9, 1928, to the sum of $1,000 for which amount Mautz executed a renewal note with an identical assignment of the same certificate of the shares of stock as collateral security for the payment thereof. This last note was made payable to the First National Bank of Ava. At the time the original note was executed by Mautz and payable to the First National Bank of Willisville in 1921, Mautz owed no other debt to that bank. On January 25, 1928, First National Bank of Ava loaned $3,500 to S. E. Roley and Mae Roley, his wife, upon their note executed by them. This note was indorsed upon the back by Clem Roley, J. A. Roley and A. C. Mautz. On March 5, 1928, First National Bank of Ava loaned $3,000 to Charles W. Wilson on a note executed by him. This note bore the indorsement of A. C. Mautz as guarantor of its payment. On March 30, 1928, the First National Bank of Ava loaned $1,200 to Jacob Yakey and Rose Yakey, his wife, on a note executed by them and indorsed on the back by A. C. Mautz. The evidence shows that said

S. E. Roley, Charles W. Wilson and Jacob Yakey were each insolvent at the time the interpleader was filed. It is the contention of the First National Bank of Ava that it has a lien upon the proceeds of the above mentioned certificate of stock for the amounts of the above mentioned notes on which Mautz was indorser or guarantor.

On May 25, 1928, Mautz, being indebted to F. F. Yakey in approximately the sum of $9,000, made a written assignment of this certificate of stock to Yakey in which it is recited:—

"For value received, I hereby sell, transfer, assign and set over unto F. F. Yakey of Stewardson, Illinois, all my right, title and interest in and to One Hundred (100) Shares in Series Thirty-eight (38) of the Capital Stock of the Stewardson Homestead Loan Association of Stewardson, Illinois; the Certificate of said Stock being now held by the First National Bank of Ava, Illinois, as collateral security for the payment of my personal Note for the principal sum of One Thousand Dollars ($1,000) due Thirty days after date, dated April 9th, 1928, with interest at Seven per cent per annum from the date thereof until paid. And I do hereby by these presents, constitute and appoint the said F. F. Yakey, my true and lawful Attorney for me, hereby giving the said F. F. Yakey full power and authority, for his own use and benefit, but at his own cost, to take all legal measures, which may be proper or necessary for the complete recovery of said Capital Stock, and in my name or otherwise to prosecute any suits or proceedings at Law or in equity therefor."

The assignment to the First National Bank of Ava of this certificate of stock as collateral to secure the payment of the $1,000 note executed by Mautz April 9, 1928, heretofore mentioned gives the payee of said note and its assigns authority to sell or collect said certificate on the maturity of the note, or at any time be-

fore, at any public or private sale and that upon any such sale or collection the holder of said note was authorized to deduct and retain from the proceeds of the same all costs and expenses, including attorney's fees, and to apply the remaining proceeds to the payment "of any note and any, either or all liabilities, as aforesaid, as such holder shall elect, returning the overplus to the undersigned." There is nothing in this assignment which in any way states or infers that the certificate of stock was assigned to secure any indebtedness of Mautz to the bank except that evidenced by the $1,000 note executed by him. In fact, Mautz owed no other indebtedness to the bank except what might arise from the indorsement of the three notes heretofore mentioned. As a general rule a bank has no right to extend its lien against a deposit or a collateral security on a debt as to which a depositor is a mere guarantor or surety.' 7 Corpus Juris 657. In our opinion it is clear from the evidence that it was never intended by the bank or Mautz that the certificate of stock should be held as collateral security for any other debt than for Mautz's individual note. "Where securities are pledged to a bank to secure the payment of a particular loan or debt, the bank has no lien on them to secure the payment of a general balance due to it from the pledgor, nor for the payment of any other claim or indebtedness than the one for which they were specifically pledged." 3 R. C. L. sec. 214. In 7 Corpus Juris 660, the rule is stated as follows: "The general lien of a bank upon a customer's deposits will not be recognized where the circumstances are inconsistent therewith; and accordingly, where moneys or securities are deposited with the bank for a particular purpose, as to pay or secure a particular loan or debt, they cannot be retained by the bank for a general balance or for the payment or other claims."

The rule announced by the above authorities, insofar as we have been able to discover, is universal and has also long prevailed in this State. *Baldwin v. Bradley,* 69 Ill. 32.

It is also contended by appellant that the assignment of the certificate of stock to F. F. Yakey was void because there was no delivery thereof by Mautz to Yakey as required by the Uniform Stock Transfer Act, Cahill's St. ch. 32, ¶ 229 *et seq.* Without discussing the question whether the assignment of the interest of Mautz in the certificate to Yakey was good in equity, it is sufficient to say that appellant is in no position to raise this question as its rights in the certificate or the proceeds thereof are fixed and it is of no concern to it who participates in the balance of the proceeds after its claim has been paid.

The chancellor awarded to appellant the amount of the principal of the note executed by Mautz, $1,000, together with the interest due thereon and also the portion of the excess dues on the stock paid by appellant. This was all appellant was entitled to and the balance was awarded to appellee, F. F. Yakey. The chancellor did not err in his finding of the rights of the parties and the decree of the circuit court is affirmed.

*Affirmed.*